# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

DAWN M. SHAW,

        Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,[1]

        Defendant.

_____/

Case No. 1:23-cv-00600-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff Dawn M. Shaw ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

On January 7, 2021, Plaintiff protectively filed a claim for DIB payments, alleging she

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 8.) On April 13, 2026, this case was reassigned to the undersigned. (*See* Doc. 15.)

became disabled on October 29, 2020, due to chronic complex cervicalgia; osteoarthritis; migraines; weakness and numbness in hands; and constant pain in neck and shoulder areas. (Administrative Record ("AR") 16, 278, 293, 412.)

Plaintiff was born in 1970 and was 50 years old on the alleged disability onset date. (AR 277, 292.) She has at least a high school education and previously worked as a medical biller. (AR 25, 413.)

## A.    Relevant Evidence of Record[3]

In February 2020, Plaintiff complained that she had experienced neck pain for two months that radiated down her bilateral upper extremities with tingling and numbness. (AR 704.) She also reported a flare up of lower back pain radiating down her bilateral anterior thighs. (AR 704.) A history of sciatica was noted. (AR 704.) On examination, Plaintiff had mild right trapezius tenderness and right shoulder joint tenderness, with full range of motion. (AR 707.) She also had lumbar spine tenderness with palpation and a positive straight leg raising test. (AR 707.) Plaintiff was assessed with acute pain of the right shoulder, neck pain, and acute bilateral low back pain with bilateral sciatica. (AR 707.) A lumbar spine x-ray performed that same month showed "significant degenerative disc disease of the lumbar spine" with a "degenerative grade 1 anterolisthesis of L4 on L5" and a "[stable] degenerative retrolisthesis of L3 on L4." (AR 730)

Plaintiff reported to her physical therapist later in February 2020 that she was experiencing neck and right shoulder pain for the past four months, migraines for the past five to six years, and difficulty gripping. (AR 851.) She denied dropping any items. (AR 851.) Plaintiff also reported low back pain but indicated it is "doing okay right now" and that she wished to "focus on her neck and shoulder." (AR 851.)

In March 2021, Plaintiff presented for a neurosurgery consultation complaining of neck and arm pain. (AR 709.) She reported a loss of fine motor skills, hand strength, and balance difficulties. (AR 709.) It was noted that Plaintiff underwent cervical epidural injections and attempted physical therapy, but her symptoms returned. (AR 709.) Her physical examination results were normal, with

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

normal strength and sensation.  (AR 711.)  An MRI of Plaintiff's cervical spine performed that same month showed an "[i]nterval C7-T1 small 2 mm right paramedian focal disc protrusion effacing the anterior thecal sac without cord compromise, an "[u]ncovertebral arthrosis . . . contributing to mild left foraminal stenosis at C4-C5 and mild right foramina stenosis at C7-T1," with "[n]o significant central canal stenosis" and "[m]ild reversal of the usual cervical lordosis."  (AR 735–36.)

Plaintiff presented for a follow up appointment with neurosurgery in May 2021.  (AR 742–44.)  She reported no changes since her last appointment and continued arm pain.  (AR 742.)  Her physical examination results were normal as before.  (AR 743–44.)  No neurosurgical intervention was indicated, and Plaintiff was directed to continue injections for pain management and to "[f]ollow up if conservative treatment fails."  (AR 744.)

In July 2021, Plaintiff attended a follow up appointment with pain management after receiving a cervical epidural injection for neck pain.  (AR 798–802.)  It was noted that she had undergone three injections, and the last two "did not work."  (AR 799.)  Plaintiff reported that she drops objects and is unable to unscrew bottles.  (AR 799.)  On examination, Plaintiff demonstrated limited range of motion due moderate pain in her cervical spine, with tenderness upon palpation.  (AR 801.)  She had "4/4" muscle strength in upper and lower extremities, and normal sensation and reflexes.  (AR 801.)  Her balance and gait were normal.  (AR 801.)  She was referred back to a neurosurgeon.  (AR 801.)

Plaintiff underwent an EMG neurology study in August 2021, which showed "generalized predominantly axonal sensory motor neuropathy affecting both upper in the right lower extremities" and "electrodiagnostic evidence of mild chronic left-sided C6 root level involvement."  (AR 787–90.)  That next month, Plaintiff presented to a neurologist complaining of numbness in both arms and neck pain.  (AR 769–74.)  A history of peripheral neuropathy and cervical spondylosis was noted.  (AR 769.)  It was also noted that she had been seen by a neurosurgeon and that no surgery had been recommended.  (AR 769.)  Plaintiff denied new focal weakness, numbness, paresthesias, double vision, trouble swallowing, trouble speaking, imbalance, and vertigo.  (AR 772.)  Her physical examination was normal, with normal motor, sensation, coordination, and "narrow based" gait.  (AR 773.)  She was prescribed Gabapentin.  (AR 773.)

In November 2021, Plaintiff complained of a muscle spasm in her back. (AR 855.) She was prescribed medications. (AR 858.) That same month, she presented for a follow up appointment with a neurologist complaining of "worsening peripheral neuropathy." (AR 859.) Her physical examination was normal, as before. (AR 862–63.) She was assessed with lumbar radiculopathy and an MRI was ordered. (AR 863–64.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on April 20, 2021, and again on reconsideration on July 30, 2021. (AR 16, 308–11, 313–14.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 324–54.) At the hearing on January 4, 2022, Plaintiff appeared by telephone with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 33–50.) A Vocational Expert ("VE") also testified at the hearing. (AR 50–54.)

**1.     Plaintiff's Testimony**

At the hearing, Plaintiff testified that she is unable to work due to lower back issues, which cause problems with sitting and standing for long periods. (AR 34.) Plaintiff testified that she cannot do her past work in medical billing because she cannot sit for long periods and because her hands cannot feel the keyboard to type or move around the monitor on the keyboard. (AR 38.) She stated she could stand for two hours and sit for three hours before she must change positions. (AR 34.) Plaintiff testified that she saw a neurologist because of constant numbness and tingling in her legs, feet, arms, and hands. (AR 35.) According to Plaintiff, the numbness and tingling cause her to walk slowly and have difficulty typing, gripping, and grasping because she does not have feeling in both hands. (AR 35–36.) Plaintiff does not use an assistive device, and she has not experienced any falls. (AR 36.)

Regarding her neck, Plaintiff testified that she has pain, but "no problems" turning her neck and that her problem was "in the cervical." (AR 46.) Plaintiff was then informed that "cervical" means "neck." (AR 46, 47–48.) According to Plaintiff, with that clarification she would have problems reaching for the monitor or keyboard in her prior work, and she would have difficulty with the monitor being higher and fluctuating her head up and down. (AR 46–47.) Plaintiff testified that

4

the most she can lift and carry is three pounds, and that lifting a gallon of milk hurts her hands. (AR 48.) She also testified that she has migraines at least twice a week and they can last four to five hours. (AR 49.)

Plaintiff testified that she can do chores around the house, such as laundry, cooking, cleaning, and washing dishes, but after 20 minutes of being on her feet she must take a break for an hour to an hour and a half. (AR 36–37, 40–41, 43.) Plaintiff later testified that she can be on her feet for an hour and a half at a time. (AR 42–43.) She can shower and dress on her own. (AR 37.) Plaintiff's daughter helps twice a week with the heavier tasks. (AR 40.) According to Plaintiff, she can use her hands for 30 minutes before needing to rest them for two hours. (AR 41.) Plaintiff testified that she must recline in her recliner to take pressure off her lower back. (AR 37.)

During a typical day, Plaintiff gets up at 5:30 a.m. and she sits in her recliner because sleeping flat hurts her back. (AR 37.) She sits for about an hour then she will wash dishes, sit for 15 to 20 minutes, and then do laundry. (AR 37–38.) Plaintiff sits for a couple of hours after that and around 4 p.m. she starts prepping for dinner, which takes about two hours. (AR 37–38.) Plaintiff testified that her husband helps with cutting/chopping and opening jars. (AR 38.) She testified that she tries not to drive because she cannot feel the steering wheel. (AR 38.)

Plaintiff uses Lidocaine patches and reclining for pain relief. (AR 39.) She also takes Gabapentin, which she said helps at night but not during the day. (AR 39.) Plaintiff did physical therapy, but it did not help after five weeks. (AR 40.)

### 2. Vocational Expert's Testimony

According to the VE, Plaintiff had past work as a medical voucher clerk, Dictionary of Operational Titles (DOT) code 214.482-018, performed at the sedentary exertional level with a specific vocational preparation (SVP)[4] of 3. (AR 50–51.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 51.) The VE was also to assume this person could perform sedentary work, with frequent bilateral handling and fingering. (AR 51.)

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

The VE testified that such a person could perform Plaintiff's past work.  (AR 51.)

Considering a second hypothetical, where the person in the first hypothetical would need a minimum of two 20-minute unscheduled breaks per day, the VE testified that such a limitation would preclude all work.  (AR 51–52.)  According to the VE, considering a third hypothetical involving a person limited to sedentary exertional work with occasional handling and fingering, there would be no work such a person could perform.  (AR 52.)

The VE considered a fourth hypothetical, which included an additional limitation to the first hypothetical that the individual would be limited to occasional reaching, the VE testified that Plaintiff's past work would be ruled out.  (AR 52.)  Finally, considering a fifth hypothetical, the VE testified that adding the additional limitation to the fourth hypothetical of occasional movement of the neck would be work preclusive.  (AR 52–53.)

**C.      The ALJ's Decision**

In a decision dated February 9, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 16–25.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 18–25.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2025, and she had not engaged in substantial gainful activity since October 29, 2020, the alleged onset date (step one).  (AR 18.)  At step two, the ALJ found Plaintiff's following impairments to be severe: peripheral neuropathy and degenerative changes of the cervical spine with cervical radiculopathy.  (AR 18–19.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 19–20.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 [§] CFR 404.1567(a) except she can frequently handle and finger.

(AR 20–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21.)

Based on the RFC assessment, the ALJ determined that Plaintiff could perform her past relevant work as a medical voucher clerk (step 4). (AR 25.) The ALJ concluded Plaintiff was not disabled from October 29, 2020, through the date of the decision. (AR 25.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 13, 2023. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the

following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective symptom complaints.  (Docs. 10, 13.)  The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations.  (Doc. 12.)  The Court agrees with the Commissioner and will affirm the ALJ's decision.

### A.    Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*.  The

claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[6] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.    Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 21.) In view of this finding, the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for

---

[6] The Court rejects the Commissioner's contention that a lesser legal standard applies. (*See* Doc. 12 at 5 n.1.)

Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.

Here, the ALJ identified at least four valid reasons for discrediting Plaintiff's testimony.

### 1.    Medical Evidence

First, the ALJ found that although Plaintiff stated she has "issues" with her "lower back" and "neck/cervical spine" and "numbness in both arms" (AR 21, 22, 23), the "evidence of record does not support the severity of symptoms and degree of limitations alleged by [Plaintiff]" (AR 21). While "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain," a lack of medical evidence "is a factor that the ALJ can consider in [their] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 680, 681 (9th Cir. 2005).  *See also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999).  "When objective medical evidence in the record is ***inconsistent*** with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original) (collecting cases); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Here, the ALJ noted that although the medical evidence "demonstrates [Plaintiff] does have severe impairments that limit her" (AR 21), it also documents "unremarkable" physical examinations, including normal motor, sensation, strength, gait, coordination, and balance.  (AR 22–23 (citing 711, 743–44, 801, 773, 862–63).)  It also shows that Plaintiff reported to providers that her low back pain was "doing okay" (AR 851) and that she denied weakness, numbness, and paresthesias (AR 772).

Plaintiff does not dispute this evidence.  Instead, she asserts that the ALJ only "recit[ed] the medical evidence" without explaining why specific testimony was rejected.  (Doc. 10 at 9.)  The Court disagrees.  A reviewing court must look to "all the pages of the ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022).  Here, the ALJ pointed to specific treatment records to highlight the disparity between Plaintiff's alleged debilitating low back pain, neck pain, and hand numbness (AR 20–21) with examination results showing normal motor, sensation, strength, gait,

coordination, and balance and self-reports of her symptoms. (AR 22–23.) Plaintiff's argument that more is required in this case is unavailing. *See Cooper v. Kijakazi*, No. 20-15935, 2022 WL 1553170, at *1 (9th Cir. May 17, 2022) (finding no error where the ALJ summarized the plaintiff's "relevant testimony concerning her key asserted limitations," "stated that he found 'these statements of extremely limited physical capacity inconsistent with the overall record,'" and then "explained the specific reasons upon which that conclusion was based."); *Young v. Saul*, 845 F. App'x 518, 519–20 (9th Cir. 2021) ("The ALJ specifically cited Young's written statements and testimony as among the items he had "carefully consider[ed]," and he gave specific reasons why he did not credit Young's claims concerning the 'limiting effects' of Young's symptoms . . . . The ALJ was not required to mention explicitly, in his ruling, each detail of Young's testimony."); *Razaqi v. Kijakaz*i, No. 1:20-CV-01705-GSA, 2022 WL 1460204, at *5 (E.D. Cal. May 9, 2022) ("The ALJ did not necessarily match each piece of evidence with the testimony it purportedly undermined, but no controlling precedent requires that level of specificity. No inferential leaps are required to find the ALJ's reasoning clear and convincing."). *See also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."); *cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (finding error where the ALJ stated only a general, nonspecific finding regarding credibility after simply reciting the medical evidence).

The Court finds the ALJ's conclusion that the evidentiary record does not support, and in fact undermines, Plaintiff's subjective statements is supported by substantial evidence. The ALJ's determination that Plaintiff's complaints are inconsistent with the medical evidence is therefore a clear and convincing reason for discounting her subjective symptom testimony. *See Smartt,* 53 F.4th at 499 (concluding that the ALJ properly discredited the claimant's testimony based on inconsistencies with objective medical evidence); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations).

### 2.    Treatment History

Second, the ALJ found that although Plaintiff claimed she had "significant low back issues,"

12

there was a nearly a two-year gap in Plaintiff's treatment for those issues. (AR 22.) "An ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

The ALJ also observed that Plaintiff's treatment for her "neck/cervical spine issues" was "conservative" in nature. (AR 22.) Specifically, the ALJ cited evidence of physical therapy, cervical epidural injections, Lidocaine patches, and treatment notes from a neurosurgeon indicating no surgery was recommended. (AR 21, 22–23 (citing 39, 709, 744, 799).) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)). *See also Jones v. Comm'r of Social Sec.*, No. 2:12–cv–01714–KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found that plaintiff's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished the plaintiff's credibility).

Plaintiff does not address, much less explain, her lack of treatment for low back pain between February 2020 and November 2021, nor does she contest the ALJ's conclusion that her neck pain treatment was conservative. Instead, she contends that the ALJ "never asserts that [Plaintiff's] testimony is belied by her 'treatment history.' Or anything close." (Doc. 13 at 6.) To the contrary, the ALJ expressly cited evidence of a "gap in treatment" and "conservative treatment" in discussing Plaintiff's allegations of "significant low back issues" and "neck/cervical spine issues," respectively. (AR 22–23.) The ALJ then concluded that Plaintiff's treatment history suggests that her symptoms "may not exist at the level of severity alleged." (AR 24.) The Court can "reasonably discern" the ALJ's path, and that is all that is required of the ALJ. *Cueva v. Kijakazi*, No. 1:20-CV-000407-BAM, 2021 WL 4192872, at *7 (E.D. Cal. Sept. 15, 2021) (citing *Brown-Hunter*, 806 F.3d at 492); *see also Guthrie v. Kijakazi,* No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. Oct. 28, 2022) *(*the ALJ sufficiently explained her reasons for discounting the plaintiff's symptom testimony, and "we can easily follow her reasoning and meaningfully review those reasons.") (citing *Kaufman*, 32 F. 4th

13

at 851); *Mazon v. Comm'r of Soc. Sec.*, No. 1:22-cv-00342-SAB, 2023 WL 3177797, at *7 (E.D. May 1, 2023) (the ALJ's sequence of summarizing evidence followed by giving specific findings, followed a conventional organization for ALJ decision writing which is sufficiently clear for judicial review). *See also Smartt*, 53 F.4th at 499 ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince.").

The Court finds that the ALJ supported their conclusion that Plaintiff's treatment history is inconsistent with her testimony as to the severity of her impairments with substantial evidence in the record. The ALJ's discounting Plaintiff's subjective symptom testimony in light of her treatment history is therefore another clear and convincing reason for doing so. *Parra*, 481 F.3d at 751; *Bunnell*, 947 F.2d at 346.

### 3.      Inconsistent Testimony

Third, the ALJ found that inconsistent testimony at the hearing suggest that Plaintiff's symptoms "may not be accurately reported." (AR 21, 24.) General inconsistent statements—even those unrelated to a claimant's symptoms—can provide a permissible basis to discredit a claimant's testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (inconsistencies in a claimant's testimony may be used to discredit subjective complaints); *Light*, 119 F.3d at 792 ("An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); *see also Smolen v. Chater*, 80 F.3d at 1284 (ALJ may rely on ordinary techniques of credibility evaluation including prior inconsistent statements or statements that are less than candid); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (1989) (an ALJ can reject pain testimony based on contradictions in plaintiff's testimony).

Here, the ALJ found that Plaintiff's hearing testimony was at times "contradict[ory]." (AR 21.) Plaintiff initially testified that she could stand for two hours at a time (AR 34), then testified that she can be on her feet for an hour and a half (AR 42), and ultimately testified that she can be on her feet only 20 minutes before needing a break (AR43). She also testified first that she had "no problems" turning her neck (AR 46), but then testified that she would have difficulty moving her neck "up and down and side-to-side" (once she understood "cervical" meant "neck"). (AR 47.)

Plaintiff—who does not address her neck movement testimony—asserts that there is no

inconsistency because "staying on task requires focus and attention and standing in one place does not." (Doc. 13 at 5.)  But Plaintiff's testimony was not directed to her ability to stay "on task": it was elicited in response to questions, by her attorney, regarding how long she "could be on [her] feet." (*See* AR 42 ("Q. So you told the judge that you could be your feet, I think, and sit two to three hours at one time, is that correct?  A Yes.  Q. Are you on your feet at home for that entire period of time that you told the judge you could do or typically do you do less than that at one time?  A. Typically I do less.  Q. So when you get to choose and don't push yourself, you might be able to go two or three hours, but what do you usually go at home?  A. About an hour-and-a-half."); AR 43 ("Q. When I asked you about when you were working and how much would you be on your feet, I thought you said about 20 minutes and then you'd take a 2-hour break?  A. Correct.").)

The Court finds that the ALJ did not err in concluding that inconsistencies in Plaintiff's testimony suggest that her symptoms "may not be accurately reported" (AR 24), and they supported this conclusion with substantial evidence in the record.  Plaintiff's inconsistent testimony is yet another clear and convincing reason to discredit her subjective complaints.  *See Smartt*, 53 F.4th at 497 (relying on "direct contradiction" in testimony to uphold adverse credibility finding).

### 4.      Daily Activities

Fourth, and finally, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040.  Even if the claimant experiences some difficulty or pain, her daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ made a reasonable determination based on specific, clear, and convincing evidence that Plaintiff's ability to participate in daily activities "undermines [her] allegations of disabling functional limitations." (AR 23.)  Plaintiff testified that she does chores around the house, such as laundry, cooking, cleaning, and washing dishes, albeit with breaks, and can shower and dress on her own.  (AR 36–37, 40–41, 43.)  Citing this testimony, the ALJ reasonably concluded that "despite her impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction." (AR 23.)  In fact, Plaintiff's daily activities require many of the same "physical and

mental abilities and social interactions . . . necessary for obtaining and maintaining employment" (AR 23). *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (plaintiff's "ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform personal care, to prepare meals, to socialize with friends, and to perform household chores" provided "substantial evidence" to support the ALJ's decision.); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting a claimant's testimony after finding that the claimant "was able to perform various household chores such as cooking, laundry, washing dishes, and shopping").

Plaintiff criticizes the ALJ for not identifying the specific testimony they found not to be credible in view of her daily activities. (*See* Doc. 10 at 11; Doc. 13 at 6–7.) The Court rejects this argument and instead finds sufficient support in the record to find the ALJ's discussion of daily activities was a clear and convincing reason to give less weight to Plaintiff's complaints of "significant low back issues," "neck/cervical spine issues," and "numbness and tingling" in her extremities (AR 22–23). *See Smartt*, 53 F.4th at 499; *Kaufmann*, 32 F.4th at 851–52 ("Looking to the entire record, substantial evidence supports the ALJ's conclusion that Claimant's testimony about the extent of her limitations conflicted with the evidence of her daily activities, such as sewing, crocheting, and vacationing."); *Lopez v. Colvin*, No. 1:13-CV-00741-SKO, 2014 WL 3362250, at *16 (E.D. Cal. July 8, 2014) ("While the ALJ did not explain that Plaintiff's daily activities were ***consistent*** with specific work activity, the ALJ found Plaintiff's daily activities were ***inconsistent*** with the severity of symptoms he alleged . . . [and] [b]ecause Plaintiff's daily activities were inconsistent with the disabling symptoms he alleged, the ALJ properly found such claims not credible.") (emphasis in original); *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("[W]e are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").[7]

---

[7] Even if the ALJ erred in relying on Plaintiff's daily activities, the Court finds the ALJ provided other clear and convincing reasons for discrediting her subjective complaints, discussed above. *See Reyes v. Berryhill*, 716 F. App'x 714, 714 (9th Cir. 2018) (where ALJ provided valid reasons for discounting claimant's testimony, "[a]ny error in other reasons provided by the ALJ was harmless"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Williams v. Comm'r, Soc. Sec. Admin.*, Civ. No. 6:16–cv–01543–MC, 2018 WL 1709505, *3 (D. Or. Apr. 9,

In sum, the Court finds that the ALJ provided at least four clear and convincing reasons, supported by substantial evidence, to discredit Plaintiff's reports regarding the severity of her limitations.

### V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:  __**May 27, 2026**__                                    _____/s/ *Sheila K. Oberto*_____
                                                                                      UNITED STATES MAGISTRATE JUDGE

---

2018) ("Because the ALJ is only required to provide a single valid reason for rejecting a claimant's pain complaints, any one of the ALJ's reasons would be sufficient to affirm the overall . . . determination.")

17